**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ANDRE DAVIS,

        Plaintiff,

                              Case No. 07-CV-11740
                              JUDGE DENISE PAGE HOOD
                              MAGISTRATE JUDGE PAUL J. KOMIVES

v.

PATRICIA CARUSO, ROBERT M. WESTWOOD,
GERALD COVERT, THERESA MERLING,
BETH GARDON, CONNIE IVES,
PEGGY LEE, SHERRY BURT,
LARRY MCMILLAN, DEBBIE ROTH,
BETTY GLASPER, CHRISTINE PEREZ,
MICHAEL STUPAREK, DAVID KOMJATHY,
AUDBERTO ANTONINI and
CORRECTIONAL MEDICAL SERVICE,

                  Defendants.

_____/

**ORDER ACCEPTING & REJECTING IN PART THE SEPTEMBER 17, 2008 REPORT**
**AND RECOMMENDATION**
**AND GRANTING AND DENYING IN PART MDOC DEFENDANTS' MOTION FOR**
**SUMMARY JUDGMENT**
**AND**
**GRANTING PLAINTIFF'S MOTION TO DISMISS DEFENDANT PEREZ WITH**
**PREJUDICE**

## I.    INTRODUCTION

    This matter is before the Court on Magistrate Judge Paul J. Komives' Report and

Recommendation ("R&R") dated September 17, 2008, **[Docket No. 89]**, recommending that the

Court grant in part and deny in part the Michigan Dep't of Corrections ("MDOC") Defendants'[1]

---

[1] The MDOC Defendants include: Patricia Caruso, Gerald Covert, Theresa Merling, Beth
Gardon, Connie Ives, Peggy Lee, Sherry Burt, Larry McMillan, Christine Perez, Michael

Motion for Dismissal and/or Summary Judgment **[Docket No. 37, filed Nov. 29, 2007]**.  The

R&R also recommends granting Plaintiff's Motion to Voluntarily Dismiss Defendant Christine

Perez **[Docket No. 60, filed March 13, 2008]**, with the caveat of making the dismissal with

prejudice. On October 1, 2008, the MDOC Defendants filed an Objection to the R&R **[Docket

No. 91]**.  Generally speaking, the Objection argues that the Magistrate Judge wrongly applied the

law or wrongly construed the evidence when recommending that the Plaintiff's claims as to three

of the MDOC Defendants should survive summary judgment.  In his response to Defendants'

Objection **[Docket No. 100, filed Nov. 25, 2008]**, Plaintiff attacks the form of Defendants'

Objection seeking sanctions for violations of Fed. R. Civ. P. 11 based on the filing of pages that

exceeded those permitted by the Magistrate Judge's R&R.[2]

       Plaintiff also filed an Objection **[Docket No. 99, filed November 24, 2008]**, wherein he

challenges the basis of the Magistrate Judge's recommendation granting summary judgment to

some of the MDOC Defendants.

## II.   STANDARD OF REVIEW

       A district court must conduct a *de novo* review of a magistrate judge's report and

recommendation to which a party objects.  28 U.S.C. § 636(b)(1).  The district "court may

accept, reject, or modify, in whole or in part, the findings or recommendations made by the

magistrate judge."  *Id.*  The requirement of *de novo* review "is a statutory recognition that Article

---

Stuparek, and Debbie Roth.

    [2]  In light of the voluminous Complaint, and thorough analysis contained in the Report
and Recommendation, the Court declines to issue sanctions for the violation of the Magistrate
Judge's page requirement.  Further, this Court is not convinced that the conduct of Defendants'
counsel warrants sanctions under Rule 11.

III of the United States Constitution mandates that the judicial power of the United States be

vested in judges with life tenure."  *United States v. Shami*, 754 F.2d 670, 672 (6th Cir. 1985).

Accordingly, Congress enacted 28 U.S.C. § 636(b)(1) to "insure [] that the district judge would

be the final arbiter" of a matter referred to a magistrate.  *Flournoy v. Marshall*, 842 F.2d 875,

878 (6th Cir. 1987).

## III.    ANALYSIS

The R&R recommends that the MDOC Defendants' Motion for Dismissal and/or

Summary Judgment should be granted in part and denied in part.  The Magistrate Judge

recommended that all of the claims against the MDOC Defendants should be dismissed, except

for certain claims against Defendants: Connie Ives, Larry McMillan, and Debbie Roth.  The

instant Objections are restricted to Defendants Ives, McMillan, Roth, Covert, and Lee.

### A. Objections as to Defendant Connie Ives

The R&R recommends that three of the claims against Defendant Ives should survive

summary judgment: (1) inadequate documentation claim, (2) delayed medical treatment , and (3)

refusal to examine Plaintiff's contusion.

#### 1.    Inadequate Documentation Claim

The Magistrate Judge urges the Court to deny the Defendant Ives' Motion for Summary

Judgment with respect to the Plaintiff's inadequate documentation claims.  The Plaintiff alleges

that on November 18, 2004, Defendant Ives informed him that Dr. Audberto Antonini should see

his foot, and escorted him into the examination room.  However, the Plaintiff claims that Dr.

Antonini never examined his foot, but that Defendant Ives later informed him that Dr. Antonini

had written a prescription for Tegretol.  The gravamen of the Plaintiff's allegation is that

Defendant Ives' failure to document this interaction in his medical record "resulted in an unnecessary bone marrow biopsy, and interruption of his cancer treatment." (Compl.¶85). Plaintiff claims that these actions prevented necessary follow-up and amounted to deliberate indifference, in violation of the Eighth Amendment. In making these assertions Plaintiff points out conflicting records concerning misleading reports of the Plaintiff's Tegretol prescription in grievance responses. The R&R found merit in the Plaintiff's claim and indicated that "the omission of the November 18, 2004 incident 'gave rise to a grave risk of unnecessary pain and suffering.'" (R&R p.35) (citing *Ferguson v. Correctional Medical Services, Inc.*, No. 5:05-CV-00078, 2007 WL 707027, *3 (E.D. Ark. Mar. 1, 2007)).

Defendant Ives' Objection petitions the Court to reject this portion of the R&R and find that Defendant Ives is entitled to summary judgment on the deliberate indifference claim. More specifically, Defendant Ives argues that the Magistrate Judge applied the incorrect standard by finding that the Plaintiff's documentation claim implicated the Plaintiff's Eighth Amendment rights. First, Defendant Ives asserts that the Magistrate Judge's finding, that there was an "omission of the November 18, 2004 incident," is a factual error. Secondly, Defendant Ives argues that even if there was an absolute absence of documentation regarding the November 18, 2004 incident it would not implicate the Plaintiff's Eight Amendment protections.

Under the Eighth Amendment, an inmate may bring a §1983 claim regarding his conditions of confinement only when he can show that there has been "deliberate indifference" to his "medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976); *see also Farmer v. Brennan,* 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 ("The Amendment [] imposes duties on these officials [to] ensure that inmates receive adequate

4

food, clothing shelter, and medical care...") (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27

(1984)). The Supreme Court has established a two-part test, with both a subjective and objective

prong, to determine whether a prisoner's right to adequate medical care has been violated.

*Farmer*, 511 U.S. at 834. First, the deprivation alleged must be "sufficiently serious' [in that]

a[n] ... official's act or omission must result in the denial of 'the minimal civilized measure of

life's necessities,'" *Id.* The second subjective prong requires plaintiff to show that police or jail

physicians had a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 297, 111

S. Ct. 2321, 115 L. Ed. 2d 271 (1991). Specifically, to satisfy the subjective prong, "the plaintiff

must allege facts which, if true, would show that the official being sued subjectively perceived

facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference,

and that he then disregarded that risk." *Comstock v. McCrary,* 273 F.3d 693, 703 (6th Cir.

2001).         Although not presently adopted by the Sixth Circuit, other federal courts have

recognized that inadequate, inaccurate and unprofessionally maintained medical records create

"a grave risk of unnecessary pain and suffering in violation of the Eighth Amendment." *Ginest*

*v. Board of County Comm'rs of Carbon County*, 333 F. Supp.2d 1190, 1200 (D. Wyo, 2004) (

"Jails and prisons must maintain adequate, complete, and accurate medical records. Maintaining

proper medical records is no less important to inmate health than providing proper physician

care. The two go hand in hand."). This Court recognizes that "[a]dequate and accurate medical

records are critically important in any attempt to provide continuity of medical care." *Id.* (citing

*Burks v. Teasdale*, 492 F. Supp. 650, 676 (W.D.Mo. 1980). However, Eighth Amendment

violations stemming from inadequate, incomplete, or inaccurate, or mislaid medical documents

are typically reserved for claims alleging systematic inadequacies in a jail's or prison's systems

of medical record keeping.  *Id.* ("When inmates have shown systematic inadequacies in a jail's or prison's system of medical record keeping, such as incomplete, inaccurate, or mislaid documents, courts have issued prophylactic injunctive relief."); *see e.g.*, *Inmates of Occoquan v. Barry*, 717 F. Supp. 854, 867 (D.D.C. 1989)("evidence has shown that medical records are consistently lost, mislaid and fail to follow inmate upon transfer,"); *Feliciano v. Gonzalez*, 13 F. Supp. 2d 151, 210 (D.P.R. 1998); *Cody v. Hilliard*, 599 F. Supp. 1025, 1062 (D.S.D. 1984); *Nicholson v. Choctaw County, Alabama*, 498 F. Supp. 295, 309 (D. Ala. 1980); *Lightfoot v. Walker*, 486 F. Supp. 504, 517, 524-25 (S.D.Ill. 1980); *Coleman v. Wilson*, 912 F. Supp. 1282, 1314 (E.D. Cal. 1999) ("magistrate judge found that 'the medical records system' within the California Department of Corrections is extremely deficient.").

Plaintiff's allegation involving the failure to document the November 18, 2004 incident does not implicate the Plaintiff's Eighth Amendment rights.  In concluding that the Plaintiff's inadequate documentation claims should survive summary judgment, the R&R cites both *Ginest*, *supra*; and *Fergurson v. Correctional Medical Services, Inc.*, No. 5:05-CV-00078, 2007 WL 707027 (E.D. Ark. March 1, 2007).   However, these cases support the proposition that Defendant Ives is entitled to summary judgment on the deliberate indifference claim arising out of the failure to document the November 18, 2004 encounter.  In *Ferguson*, the prisoner brought a § 1983 claim alleging deliberate indifference for a doctor's failure to record, in the prisoner's medical records, a procedure where he removed a staple from the prisoner's arm.  *Fergurson*, 2007 WL 707027, at *3.  While both the doctor and prisoner agreed that the procedure occurred, there was no evidence in the medical records.  *Id.*  In adopting a report and recommendation, the *Fergurson* court held that the failure to document the procedure did not implicate the Eighth

Amendment. *Id.* at *4 ("Plaintiff has not alleged or demonstrated how Dr. Ifediora's failure to place his note of the October 8th procedure in the chart gave rise to a grave risk of unnecessary pain and suffering.") This Court finds while Plaintiff has alleged harm from the failure to document the November 18, 2004 encounter, he has failed to establish how it has given rise to a grave risk of unnecessary pain and suffering.

The uncontested facts indicate that Plaintiff sought the attention of Defendant Ives regarding the swelling of his foot. Both parties agree that Defendant Ives evaluated the foot and took the Plaintiff to an exam room, where he was ultimately prescribed Tegretol. While the documentation of the encounter may be limited and vary in dates, there is no question that the Plaintiff ultimately received the prescription by November 24, 2004. Complaint ¶¶35-38 (including Ives Step I Response to Grievance JCF-2891). The Plaintiff submits that the Tegretrol prescription was the cause of his white blood cell count deficiency, which in turn caused him to endure a bone marrow biopsy, and delay in his cancer treatments. Complaint ¶¶53, 59-64. However, the Court is unable to ascertain how the Plaintiff alleges that the failure to document the November 18, 2004 encounter actually resulted in an unnecessary "bone marrow biopsy." The Complaint itself indicates that the Plaintiff's Tegretrol *prescription* was documented, even if his *encounter* with Defendant Ives was not. Complaint ¶56-57 ("Dr. Boxer told me she was going to have the facility [JCF] fax her a copy of all the medication I was presently taking....Dr. Boxer very animatedly asked me, 'How long have you been taking this stuff? Who put you on Tegretol?"). The Court notes the important distinction, had there been no documentation of the *prescription*, Plaintiff may have a claim; however, here failure to document the encounter is not sufficient to support to a deliberate indifference claim. The encounter with

Defendant Ives was not scheduled, and appears to be a routine encounter between a nurse and prisoner. The failure to record this encounter does not alone implicate a deliberate indifference claim. However, the failure to adequately and accurately document a prisoner's prescription medication may implicate a claim for deliberate indifference, especially in light of evidence of a systematic or repeated failure to do so. The Court finds Defendant's objection well-taken, and holds that Defendant Ives is entitled to summary judgment on the deliberate indifference claim arising from inadequate documentation.

2.      Delay in Prednisone[3] Treatment

The Magistrate Judge also recommends denying Defendant Ives' Motion for Summary Judgment with respect to Ives' role in the delay of the Plaintiff receiving his Prednisone medication. The Plaintiff alleges that Defendant Ives is partially responsible for delaying his treatment on at least two occasions where she failed to deliver his Prednisone as prescribed by the physician. The Plaintiff claims that Ives caused him to receive his November 22, 2004 dosage of Prednisone two days late. Plaintiff further submits that Defendant Ives caused him to receive his February 20, 2005 dosage of Prednisone seven to ten days late. The Plaintiff supports his accusations by citing the Defendant Ives' response to a grievance that listed a different date than Defendant Lee's grievance response. The Plaintiff also relies on Robert L. Cohen, M.D.'s, July 2004 "First Report of the Associate Monitor Regarding Medical Care

---

[3] Prednisone is "[a] medical substance having the properties of cortisone but having greater power to overcome inflammation, especially in the inflammatory changes of joint disease." SCHMIDT'S DICTIONARY OF MEDICINE, VOLUME 3, P-302 (1995). Based upon the grievance responses, it appears that the Prednisone was to be used in advance of chemotherapy treatments. (Compl. ¶76) An excerpt of a medical dictionary submitted by Plaintiff also indicates that Prednisone is occasionally used for the treatment of some blood disorders, such as leukemia. (Pl.'s Mot. for Prel. Inj, Ex. B).

Services at the Hadix Facilities of the Jackson Medical Complex"("Cohen Report"), which describes the process by which medication orders are reviewed, transmitted to the pharmacy, and dispensed by nursing staff.  The Magistrate Judge agreed with the Plaintiff and urged the Court to deny Defendant's Motion for Summary Judgment as there remain issues of material fact regarding "whether Ives was involved in the February 2005 tardiness of plaintiff's Prednisone prescription." (R&R, p. 38).

Defendant Ives' Objection petitions the Court to reject the R&R because the Magistrate Judge improperly relied on an outside source to determine whether Defendant Ives had some involvement in the February 2005 claim of delay in receipt of medication.  In support of the Objection, Defendant Ives argues that the Magistrate Judge should have relied on her affidavit, indicating that she is not part of the nursing staff which distributes medication, instead of the Cohen Report.  Defendant submits that the Cohen Report should not be a factual finding in this Court, as it is "one expert's declaration" that was "submitted to another court in another case." (Defs.' Objection to Sept. 17, 2008 R&R, p. 10).  The Defendant further argues that because she was not actively involved in the delay of treatment, § 1983 does not impose liability on her.  In the alternative, the Defendant argues that the delay that Plaintiff experienced waiting for his Prednisone does not implicate the Eighth Amendment.

This Court is persuaded that the Magistrate Judge correctly concluded that a material question of fact exists concerning Defendant Ives' participation in the delayed receipt of the Prednisone prescription.  Defendant Ives' contention that the Magistrate Judge only relied upon the Cohen report ignores the other basis of his decision.  When determining that a material question of fact exists, both this Court and the Magistrate Judge are required to "view all

evidence in the light most favorable to the Plaintiff." *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1045 (6th Cir. 1998).  When concluding that there remain genuine issues of material fact, the Magistrate Judge also relied upon the facts as alleged in the verified Complaint, and the variance in Defendant Ives' grievance responses.  Further, this Court is not convinced that the Magistrate Judge's reliance on the Cohen report, in addition to other circumstantial evidence contained in the record, was in error.  *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) ("Finally, the Sixth Circuit has concluded that...trial courts have been afforded considerably more discretion in evaluating the weight of the nonmoving party's evidence.")  Additionally, the Sixth Circuit has previously found a similar report to be the only means of circumstantial evidence tending to demonstrating that a "[prison] facility's health care system was poorly run in general."  *Hill v. Marshall*, 962 F.2d 1209, 1212 (6th Cir. 1992).

While the Magistrate Judge correctly recommended that material questions of fact exist in reference to Defendant Ives' involvement in the delay of the Prednisone prescription, he failed to address whether the delay amounted to a violation of the Eighth Amendment.  On this point, Defendant Ives' Objection is well-taken.  Because Plaintiff received medical care, the question before the Court is whether the delay experienced before receiving that care amounted to a violation of due process rights.  *See Cain v. Irvin*, 286 Fed. Appx. 920, 926 (6th Cir. 2008).  The Sixth Circuit Court of Appeals has previously examined when a delay in treatment may arise to a violation of the Eighth Amendment.  *Blackmore v. Kalamazoo*, 390 F.3d 890, 897-98 (6th Cir. 2004) (citing the decisions of other appellate courts that "involve prisoner claims of delay in

treatment that caused injury, loss, or handicap").[4]  It is well-established that the Eighth

Amendment "forbids prison officials from 'unnecessarily and wantonly inflicting pain' on an

inmate by acting with 'deliberate indifference' toward the inmates serious medical needs."

*Blackmore*, 390 F.3d at 895.  An inmate must satisfy both an objective and subjective component

in order to establish a deliberate indifference claim based upon a prison officials intentional

denial or delay of access to medical care.  *Id.*  First, the objective component "requires an inmate

to show that the alleged deprivation is 'sufficiently serious."  *Napier v. Madison County*, 238 F.

3d 739, 742 (6th Cir. 2001)(citing *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128

L. Ed. 2d 811 (1994)).  Secondly, in order "[t]o satisfy the subjective component, an inmate must

show that the prison officials had a 'sufficiently culpable state of mind.'"  *Napier*, 238 F.3d at

742.  While Defendant Ives argues that Plaintiff has failed to provide sufficient evidence on both

grounds, the Court is persuaded that Plaintiff has failed to satisfy the objective component of the

deliberate indifference analysis.

　　In cases,"where the injury is not apparent," such as the present[5], "an inmate who

---

　　[4] Other examples involve delayed administration of medication, *see, e.g.*, *Canady v.
Wilkinson*, 90 Fed. Appx. 863 (6th Cir. 2004); *Dozier v. Pauley*, 24 Fed. Appx. 398 (6th Cir.
2001); or claims based on a determination by medical personnel that medical treatment was
unnecessary.  *See, e.g., Smith v. Franklin County*, 227 F. Supp. 2d 667, 677-78 (E.D. Ky. 2002).
The Sixth Circuit has addressed whether any delay in proving medical care was harmless, *Craw
v. Gray*, 159 F. Supp. 2d 679 (N.D. Ohio 2001), or instances where the prisoner had a "very
minor injury for which people outside prison would not even think of seeking outside medical
treatment."  *See, e.g.*, *Nickens v. Anderson*, 56 Fed. Appx. 244, 245 (6th Cir. 2003); *see also
Wright v. Taylor*, 79 Fed. Appx. 829 (6th Cir. 2003) (decaying tooth); *Jennings v. Al-Dabagh*,
275 F. Supp. 2d 863 (E.D. Mich. 2003) (foot infection from which plaintiff suffered "minor
discomfort").

　　[5] The Court arrives at this conclusion principally because the Plaintiff's illness is
analogous to the "long-term and well monitored" non obvious kidney failure that occurred in
*Napier* and as such necessitates the presentation of verifying medical evidence.  *Blackmore*, 390

11

complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Blackmore*, 390 F.3d at 898; *Cain*, 286 Fed. Appx. at 926.   This prerequisite to establishing the objective prong in non-obvious injury cases "ensures an accurate appraisal of whether the alleged deprivation is sufficiently serious." *Cain*, 286 Fed. Appx. at 926 (internal citation omitted).  In sum, the verifying medical evidence requirement applies where the plaintiff's "deliberate indifference claim is based on the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious." *Blackmore*, 390 F.3d at 898.  In such circumstances, medical proof is necessary to assess whether the delay caused a serious medical injury.  *Id.*

The record before this Court is replete with medical documentation, much of which is illegible or does not relate to the Prednisone prescription, however reviewing the documents submitted in the Complaint, and those in Plaintiff's Motion for Preliminary Injunction, the Court is unable to find any medical documentation that establishes the detrimental effect of the delay in receiving Prednisone.  To be sure, Plaintiff has submitted his grievances complaining of the delay in receiving the prescription, along with medical documentation showing that he was prescribed Prednisone among a number of other drugs (Mot. for Prel. Inj., Ex. A).  Plaintiff even offers certain medical documents that indicate his treating physician noted the delay[6], however

---

F.3d at 898–99 ("In a word, *Napier* does not apply to medical claims where the facts show an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers").

[6]  In what appears to be a medical form supplied by the Center for Hematology of S. Michigan, Dr. Grace J. Boxer, Plaintiff's Oncologist, wrote in legible portion:
　　　　Did <u>not</u> receive Prednisone chemo with week 1 as ordered needs to get

these records fall short of establishing verifying medical evidence as required by the Sixth

Circuit in *Napier*.  There is a noticeable absence of any medical documentation establishing the

detrimental effect of a delay in the Prednisone prescription.  Plaintiff's failure to present

verifying medical evidence precludes him from bringing a deliberate indifference claim for

delayed treatment, even if, as Plaintiff alleges, Defendant Ives knew of the seriousness of

Plaintiff's initial injury.  *See Napier*, 238 F.3d at 742; *see e.g.  Moore v. Michigan*, No. 07-cv-

561, 2008 WL 724151, 2008 U.S. Dist. Lexis 20754 at *3-4 (W.D. Mich. Mar. 17, 2008); *Davis

v. Wilkinson*, No. 2:04-CV-303, 2006 U.S. Dist. Lexis 15021, at*20-28 (S.D. Ohio Mar. 31,

2006).  In light of the above analysis, the Court finds that Plaintiff is unable to establish a claim

for deliberate indifference based upon Defendant Ives' alleged delay in filling Plaintiff's

Prednisone prescription.

### 3.       Deliberate Indifference to Examine Plaintiff's Head Contusion

Defendant Ives' final objection concerns the Magistrate Judge's recommendation that

Plaintiff's deliberate indifference claim, arising out of Plaintiff's July 8, 2005 request that she

look at a contusion, should survive summary judgment.  In particular, Defendant Ives argues that

the allegations on which the Magistrate Judge relied are insufficient to survive summary

judgment because, "a bare assertion of deliberate indifference is not enough to show a genuine

fact issue."  (Defs' Objection to Sept. 17, 2008 R&R, p. 14).  This Court finds that the

Magistrate Judge reached the proper conclusion and that Plaintiff has submitted sufficient

evidence to survive summary disposition.

---

chemo as ordered * Spoke ... Peggy Lee Coordinator at Cotton she
received grievance 2/16 from ... illegible.

13

The gravamen of Defendant Ives' objection is that Plaintiff has failed to proffer sufficient evidence on which it can be inferred that Defendant Ives was deliberately indifferent to a serious medical need. Indeed, Defendant Ives has provided the correct legal standard, for a claim to be cognizable, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to a serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). As previously noted, "a constitutional claim for deliberate indifference contains both an objective and subjective component." *Dominguez v. Correctional Medical Services*, 555 F.3d 543, 550 (6th Cir. 2009). To satisfy the objective component, the plaintiff must show the existence of a "sufficiently serious" medical need. *Id.* (citing *Farmer*, 511 U.S. at 834). In contrast, the subjective component "requires a plaintiff to 'allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded the risk." *Id.* (citing *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001). As it relates to the subjective prong, the Sixth Circuit Court of Appeals has noted that "[b]ecause government officials do not readily admit the subjective component of this test, it may be "demonstrat[ed] in the usual ways, including inference from circumstantial evidence ... and a factfinder may conclude that prison officials knew of a substantial risk from the very fact that the risk was obvious." *Dominguez*, 553 F.3d at 550.

Viewing the facts in the light most favorable to the Plaintiff, this Court concludes that the Magistrate Judge was correct to determine that the facts may show that Defendant Ives was deliberately indifferent to a serious medical need. Defendant Ives concedes speaking with Plaintiff about the contusion on his head, but avers that she was not involved in "an

14

examination" of a contusion on Plaintiff's head.  (Defs.' Objection to the Sept. 17, 2009 R&R, p. 14).  However, the Court finds the purported distinction nothing more than sophistry. Regardless of the nomenclature, both Plaintiff's Verified Complaint, and Defendant Ives' Affidavit demonstrate that an encounter between the two took place, in which the parties discussed the Plaintiff's head injury.  According to the Plaintiff, Defendant Ives refused to examine the contusion, which because of Plaintiff's Ommaya reservoir presented a uniquely dangerous set of circumstances. (Compl. ¶96).  Further, Plaintiff claims that Defendant Ives "has seen the result of hard contact with the Omaya" but refuses to provide medical care because of a retaliatory motive brought on by his continued grievances.  (*Id.*) To support these allegations Plaintiff offers grievances and Oncology Progress Notes which allegedly record an abrasion.[7] (Compl. ¶97).  Viewing the facts in a light most favorable to the Plaintiff, and aware of the unique physical condition of the Plaintiff, Defendant Ives' awareness of such condition, and Ives' failure to rebut these allegations in her affidavit, the Court finds that Plaintiff's deliberate indifference claim arising from Defendant Ives' July 8, 2005 failure to examine the Plaintiff's contusion properly survives summary judgment.  *See Phillips v. Roane County*, 534 F.3d 531, 542 (6th Cir. 2008).

### B.    Objections as to Defendant Larry McMillan

All of the allegations concerning Defendant McMillan arise out of his failure to properly process several of the Plaintiff's grievance requests.  Both the Plaintiff and Defendant take issue with the Magistrate Judge's recommendation that some of Plaintiff's claims against Defendant McMillan should survive summary judgment.  Defendant McMillan submits that the Magistrate

---

[7]  The Court notes that the report contains handwriting that is illegible.

Judge ignored the weight of the evidence when allowing some of the Plaintiff's claims to survive summary judgment based merely on bare assertions of the Plaintiff. In particular, Defendant McMillan challenges the Magistrate Judge's finding that material questions of fact remain as to Defendant McMillan's failure to provide certain Step II grievance appeal forms. In support of this assertion, McMillan argues that the Magistrate Judge improperly discounted the evidence he presented, namely, his sworn affidavit, Grievance Summary Report and attached individual grievance printouts, which indicate that he did not receive any requests for the Step II grievances at issue. This Court is unpersuaded by Defendant McMillan's objection.

The essence of Defendant McMillan's objection is that Plaintiff has failed to make a sufficient showing to rebut the information contained in the affidavit and supporting documentation, and as such the Magistrate Judge relied only upon Plaintiff's bare allegations in permitting his claims to survive summary judgment. However, beyond the allegations contained in the Complaint, the Magistrate Judge provided two additional grounds for concluding that Plaintiff's claim, regarding the delay/failure to provide certain Step II grievance appeal forms, should survive summary judgment: (1) the printouts do not indicate whether an appeal form was requested, (2) Defendant McMillan did not address the Plaintiff's September 11, 2006 request. Upon review of the parties arguments and averments, the Court is persuaded that these grounds are sufficient to defeat summary judgment. *Curry v. Scott*, 249 F.3d 493, 505-06 (6th Cir. 2001) ("Summary judgment is appropriate only when the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial."). In reference to the printouts, attached to the Prisoner Grievance Summary Report, the Magistrate Judge concluded that the printouts of the

16

subject grievances do not indicate whether or not an appeal form was requested.  (Grievance

Forms, Affidavit of Larry McMillan, MDOC Defs.' Mot. for Summ. J., Ex. E).  Indeed, the

attached printouts demonstrate – by the absence of a date entered into the "Appeal Form Sent"

box – that no such form was ever sent, but these printouts, in fact, have no way of showing

whether or not a Step II form was ever *requested*.  The distinction is pivotal, especially when

viewing the evidence in a light most favorable to the Plaintiff and coupled with Defendant

McMillan's failure to respond to the September 11, 2006 Prisoner kite.

The September 6, 2008 kite is addressed to Defendant McMillan, and requests the

identical grievances at issue in the present claim.  In his Objection, Defendant McMillan submits

that he addressed the September 11, 2006 kite as provided in his motion for summary judgment.

However, after reviewing the cited portion of the motion and attached documentation, the Court

finds that he did not sufficiently address this specific kite.  True, while the Affidavit of Larry

McMillan addresses the substance of the "kite dated 9-11-06 attached to his Complaint," it fails

to address any reason for the prolonged delay in reprocessing the kite.  As such, the Court finds

that the Magistrate Judge properly concluded that material questions of fact exist and recognizes

that Defendant McMillan's role in the delay was, at a minimum, unclear.

Further, this Court is convinced that the Plaintiff's sole objection to the September 17,

2008 R&R, in reference to Defendant McMillan, provides additional grounds for the denial of

Defendant's summary judgment motion.  Specifically, Plaintiff argues that the Magistrate Judge

relied on a perjured affidavit when granting summary judgment in favor of Defendant McMillan

on the claim arising out the February 23, 2006 rejection of Plaintiff's February 18, 2006

grievance on the basis of prohibited language.  Part of the Magistrate Judge's reasoning relied

upon McMillan's affidavit, which in pertinent part provided an explanation for the denial of the grievance:

> On February 23, 2006, I returned a grievance to [plaintiff] in accordance with PD 03.02.130(G), which describes rejection of irresponsible and improper grievances... When prisoner Davis rewrote the grievance without the prohibited language and resubmitted it, I processed it, I processed the grievance with tracking number JMP 06-02-440-12F3.

[Affidavit of Larry McMillan, MDOC Defs.' Mot. for Summ. J., Ex. E].  Based upon a review of the documents attached to the affidavit of Larry McMillan, this Court finds that the Plaintiff's objection has merit. The affidavit provides that both the rejected grievance [*Id.* at E-2], and the corrected/resubmitted grievance [*Id.* at E-5] are attached as exhibits.  However, as pointed out by Plaintiff, it appears that both of the attachments are identical in their content, which evidence an error in either the affidavit or the reprocessing of the grievance.  Unwilling to label this variance perjury per se, this Court finds that the distinction in conjunction with Plaintiff's allegations, provide further support for the denial of the MDOC Defendant's motion for summary judgment as to Defendant McMillan.

### C.      Objections as to Defendant Debbie Roth

The allegations concerning Defendant Roth arise from her repeated failure to fill certain prescription requests related to Plaintiff's chemotherapy and pain medications.  Defendant Roth likewise urges this Court to reject the portion of the R&R denying summary judgment because she was not personally involved in depriving Plaintiff of his medication, and the Magistrate Judge wrongly relied on the Cohen Report in finding otherwise.  When recommending that Defendant Roth is not entitled to summary judgment, the Magistrate Judge cited *Martin v. Harvey*, for the proposition that "[t]he denial of the grievance is not the same as a denial of a

18

request to receive medical care." 14 Fed. Appx. 307, 309 (6th Cir. 2001). Indeed, it is this controlling distinction in the level of personal involvement – active participant versus grievance reviewer – on which Defendant Roth's objection rests, and this Court now turns.

As such, this Court must once again determine whether sufficient evidence exist to demonstrate that Defendant Roth's role in the alleged denial of medical care superseded that of a grievance reviewer or supervisor. Viewing the evidence and drawing all reasonable inferences in favor of the non-moving party, this Court is convinced, at this stage, that Plaintiff's evidence presents sufficient disagreement to require submission to a jury. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). In the verified Complaint, Plaintiff alleges that he had numerous contacts with Defendant Roth "regarding the fillings of prescriptions written by [his] Oncologist(s)" (Compl. ¶ 127). Beyond the allegations, Plaintiff submits a letter addressed to Roth, and a grievance concerning her failure to fill his Mercaptopurine and Methotrexate prescriptions. Additionally, Plaintiff again relies on the Cohen report to assert that "[m]edication orders are reviewed and transmitted to the pharmacy by nursing, and medications are distributed by nurses." (Cohen Report, Pl.'s Resp. to MDOC Def.'s Mot. for Summ. J., Ex. A). As previously noted, this Court is satisfied that the Cohen report is a sufficient source of circumstantial evidence. Accordingly, this Court is persuaded that the Magistrate Judge correctly concluded that Defendant Roth is not entitled to summary judgment to the extent that Plaintiff's claim is based on an alleged interference with his oncologist's prescriptions for pain medications.

### D.   Defendants Covert and Merling

Plaintiff objects to the Magistrate Judge's recommendation finding that the claims

19

against Defendants Covert and Merling should be dismissed on exhaustion grounds.  In arriving at this conclusion, the Magistrate Judge performed a thorough assessment of Plaintiff's submitted grievances, and the absence of grievance URF 04-06-1204-12E on the Grievance Inquiry printout.  Relying on *Bey v. Johnson*, Plaintiff avers that he has presented sufficient circumstantial evidence to refute the Magistrate Judge's finding that no Step III grievance was filed.  407 F.3d 801, 809 n.9 (6th Cir. 2005) *overruled by* 549 U.S. 199.  Liberally construing the Objection, Plaintiff more appropriately relies on *Boyd v. Corrections Corporation of America*, for the proposition that when a prison "totally fail[s] to respond to [a] grievance," that the grievance should be construed as exhausted for the purposes of § 1197(e).  380 F.3d 989, 996 (6th Cir. 2004).  Upon review of the submitted grievances, this Court is convinced that the Magistrate Judge reached the correct conclusion for the proper reasons.

The Prison Litigation Reform Act of 1995 (PLRA), 42 U.S.C. § 1997e *et seq*., provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a). As such, the exhaustion of all available administrative remedies is a mandatory prerequisite before a prisoner can bring a federal claim.  *Jones v. Bock*, 549 U.S. 199, 204, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007).  In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules.  *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006).  "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 204.  Upon review of the

record, it appears that Plaintiff failed to completely exhaust the grievance alleging claims against Defendants Covert and Merling.  In fact, Plaintiff in his Objection, concedes that the only evidence that he has is the attached Step III grievance, however, there is no evidence that it was ever sent or responded to based upon its absence on the Grievance Inquiry printout.

Further, Plaintiff's reliance on *Boyd* is misplaced.  At the outset, this Court recognizes that to the extent that the *Boyd* decision relied on the "complete exhaustion requirement" that once dominated this Circuit, it is overruled.  *Jones v. Bock*, 549 U.S. 199, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007).  However, it is still mandatory authority in regards to the proposition asserted by Plaintiff.  Under certain circumstances, "the exhaustion requirement is satisfied where prison officials fail to timely respond to an inmate's written grievance."  *Boyd*, 380 F.3d at 996 (citing *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002)).   To hold otherwise would permit prison officials "to exploit the exhaustion requirement through indefinite delay in responding to grievances."  *Boyd*, 380 F.3d at 996.  The plaintiff in *Boyd* qualified for this exception to the exhaustion requirement/ affirmative defense because (1) he submitted his grievance form by giving it to the corrections officer, (2) the grievance covered the events alleged in the complaint, (3) the grievance was delivered to the individual who is designated in the grievance procedure as the appropriate recipient of grievances, and (4) the prison officials totally failed to respond to the grievance.  *Id.*  In the case at bar, neither the evidence submitted by Plaintiff, nor the current factual circumstances support such relief.  As appropriately noted by the Magistrate Judge this is not an instance where the prison totally failed to respond to Plaintiff's grievance.  On the contrary, the grievance at issue concerning Defendants Covert and Merlin itself made it to Step II.  The Plaintiff has not presented sufficient evidence to overcome summary judgment on this

issue, more specifically a Step III grievance response.

###### E.      Defendant Peggy Lee

Plaintiff also opposes the Magistrate Judge's recommendation to dismiss Defendant Lee. The Magistrate Judge concluded that Plaintiff's allegations against Defendant Lee rested upon her failure to act although she was aware of his complaints.  The Magistrate Judge properly found that, in the absence of direct participation, an allegation against a supervisor who failed to take corrective action after learning of a subordinates' actionable wrong doing "is insufficient to impose liability on supervisory personal under § 1983."  *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988).  Yet, Plaintiff argues that Defendant Lee's involvement was more than just supervisory, and the record contradicts the statements contained in her affidavit.  Upon review of his alleged claims, this Court is convinced that the objection is without merit.

In support of his claim, Plaintiff points to the Center for Hematology-Oncology Report, prepared by his Special Oncologist Dr. Grace Boxer ("Boxer Report").  In legible part, the Boxer Report provides the following:

> Did <u>not</u> receive Prednisone chemo with week 1 as ordered needs to get chemo as ordered * Spoke ... Peggy Lee Coordinator at Cotton she received grievance 2/16 from ... [illegible].

(Boxer Report, Compl. ¶78 attachment).  Based on this notation, Plaintiff argues that Defendant Lee's role in the alleged interference with his medication was more than just a supervisory role. However, in this Court's view, the notation supplied in the Boxer Report is not inconsistent with the Affidavit of Peggy Lee.  In fact, the Boxer Report substantiates Defendant Lee's affidavit as both tend to demonstrate that her involvement in the alleged events was limited to the reviewing of health care grievances.  As such, this Court accepts and adopts the Magistrate Judge's

22

recommendation finding that Defendant Lee should be dismissed.

## IV.    CONCLUSION

Accordingly,

For the reasons set forth above the Report and Recommendation of Magistrate Judge Paul

J. Komives **[Docket No. 89, filed Sept. 17, 2008]** is **ADOPTED** and **REJECTED IN PART**.

**IT IS FURTHER ORDERED** that Defendant the MDOC Defendants' Motion to

Dismiss **[Docket No. 37, filed Nov. 29, 2007]** is **GRANTED IN PART and DENIED IN**

**PART**.  The claims against the following MDOC Defendants are dismissed: Covert, Merling,

Gardon, Lee, Burt, Sturapek, and Caruso.  Consistent with this Order, the claims based on

inadequate documentation, and delay in filling the Prednisone prescription against Defendant

Ives are dismissed; the claim based on her failure to examine Plaintiff's contusion remains, as do

the claims against Defendants McMillan, and Roth.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Voluntarily Dismiss Defendant

Christine Perez **[Docket No. 60, filed March 13, 2008]** is **GRANTED WITH PREJUDICE**.


S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated:  March 30, 2009

I hereby certify that a copy of the foregoing document was served upon Andre Davis,
Reg. No. 198028, Muskegon Correctional Facility, 2400 S. Sheridan Rd., Muskegon, MI 49442
and counsel of record on March 30, 2009, by electronic and/or ordinary mail.

S/William F. Lewis
Case Manager

23